**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| GREGORY A. FARLEY, ) | |
| ) | CASE NO. 1:15-cv-01282 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | KENNETH S. McHARGH |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security  ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 14).  The issue before the undersigned is whether the final decision of the Acting Commissioner of Social Security ("Commissioner") denying Plaintiff Gregory A. Farley's ("Plaintiff" or "Farley") application for a Period of Disability("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 *et seq*., is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, this Court VACATES and REMANDS the final decision of the Commissioner for further proceedings consistent with this opinion.

**I.  Procedural History**

Plaintiff filed applications for POD and DIB in March of 2012.  (Tr. 223).  Plaintiff alleged he became disabled on January 1, 2007 in his application.[1]  (*Id*.)  The Social Security

---

[1]  According to the decision, the alleged onset date was January 1, 2011.  (Tr. 48).  The parties do not indicate whether the alleged onset date was subsequently amended.

Administration denied Plaintiff's application on initial review and upon reconsideration. (Tr. 183-85, 190-92).

At Plaintiff's request, an administrative law judge ("ALJ") convened an administrative hearing on August 29, 2013 to evaluate his application. (Tr. 48-58.) Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE") also testified. (*Id*).

On September 26, 2013, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 48-58). After applying the five step sequential analysis,[2] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers, and that he was not under disability at any time between the alleged onset date and the date of the decision. (*Id*).

---

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id*. § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id*. § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id*. § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).

Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 38). The Appeals Council denied the request for review, making the ALJ's determination the final decision of the Commissioner. (Tr. 1-4). Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 1383(c)(3).

## II.  Evidence

### A.  Personal and Vocational Evidence

Plaintiff was born in January of 1961 and was 45 years old on the alleged onset date and 52 years old at the time of the hearing. (Tr. 223). As such, for social security purposes, Plaintiff transitioned from a "younger person" to a person "closely approaching advanced age." 20 C.F.R. § 404.1563(c) & (d). Plaintiff has past relevant work as a tool and die maker. (Tr. 56). Plaintiff has at least a high school education. (Tr. 56).

### B.  Medical Evidence[3]

#### 1.  Treatment Records

On December 28, 2011, the results of an MRI demonstrated diffuse thoracic spondolytic features, as well as disc degeneration and early vertical loss of disc height with associated marginal osteophyte formation throughout the majority of Plaintiff's pine. (Tr. 351). There was no evidence of any significant stenotic or neurocompressive pathology. (*Id*.) Jerold P. Gurley, M.D., reviewed the MRI results, and his impression was status post anterior cervical discectomy and fusion surgery (ACDF) at C6-C7, mild adjacent segment spondylosis C5-C6, lumbar

---

[3] As the issue of whether the Commissioner carried her burden at Step Five is dispositive and centers on whether the hypothetical question posed to the VE accurately portrayed the limitations contained in the residual functional capacity (RFC) determination, a thorough review of the medical evidence is not warranted. Therefore, in the interests of judicial economy, the Court's review of the medical history is intentionally limited in scope.

spondylosis L5-S1, and diffuse and thoracic spondylosis. (*Id*.) Dr. Gurley recommended symptomatic treatment, maximizing non-surgical treatment, and referred Plaintiff for pain management. (*Id*.)

On January 17, 2012, Plaintiff was first seen by Abdallah Kabbara, M.D., for pain management related to his complaints of back pain. (Tr. 349-350). Physical examination revealed an antalgic gait, an ability to stand on heels and toes without difficulty, flexion/extension of the lumbar spine within acceptable range, some limitation in the range of motion of the cervical spine, and no tenderness on palpation. (Tr. 349-350). Dr. Kabbara's impression was multi-level cervical, thoracic, and lumbar disc displacement and spondylosis. (Tr. 350). He noted that the extent of Farley's disease made intervention challenging. (*Id*.) He prescribed Methadone and Gabapentin, and recommended a trial thoracic epidural steroid injection. (*Id*.)

On January 25, 2012, Plaintiff received a steroid injection. (Tr. 348).

On February 10, 2012, Plaintiff reported no significant improvement from the injection. (Tr. 346). Dr. Kabbara's impression remained unchanged and he increased the dose of both medications. (*Id*.) Due to Plaintiff's lack of a positive response to the steroid injection, Dr. Kabbara explained there was no merit to continuing that course of treatment. (Tr. 347).

On March 9, 2012, Plaintiff described some improvement with the medications but continued to rate his pain as 6 of 10 and noted episodes where his pain would remain severe. (Tr. 345). Dr. Kabbara continued to increase Plaintiff's medications. (*Id*.) That same date, Dr. Kabbara completed a "Functional Capacity Questionnaire (Physical 1.0)." (Tr. 343, 524). Plaintiff's diagnoses included degenerative disc disease, disc displacement, and spondylosis of

4

the lumbar, cervical, and thoracic spine. (*Id*.) Dr. Kabbara opined that Plaintiff could only stand/walk from zero to two hours and sit for zero to two hours in an eight-hour day. (*Id*.) Further, he found Plaintiff could occasionally carry less than ten pounds, rarely carry ten to twenty pounds, and never carry fifty pounds. (*Id*.) In addition, Plaintiff could occasionally finger and grasp, rarely handle, and never stoop (bend) or crouch. (*Id*.) Dr. Kabbara believed Plaintiff's pain would occasionally interfere with his attention and concentration to the extent it would interfere with the performance of even simple tasks. (*Id*.) Finally, Dr. Kabbara noted that Plaintiff's impairments would cause him to miss more than four days of work per month. (*Id*.)

Plaintiff subsequently continued to receive pain management treatment from Dr. Kabbara in April and September of 2012. (Tr. 370-371, 472-473).

On May 29, 2012, Plaintiff reported to the ER and was admitted to the hospital. It was believed he may have sarcoidosis. (Tr. 363-365.) Plaintiff's final diagnosis, however, did not include sarcoidosis. (Tr. 364).

**2. State Agency Opinions**

On May 31, 2012, State Agency physician William Bolz, M.D., reviewed Plaintiff's medical records. (Tr. 155-156). Dr. Bolz found that Plaintiff, in an 8-hour workday, could lift 10 pounds frequently and 20 pounds occasionally; stand and/or walk 6 hours; sit for 6 hours; and could only occasionally climb ladders, ropes, scaffolds, balance, stoop, kneel, crouch, or crawl. (*Id*.)

On December 17, 2012, State Agency physician Gary Hinzman, M.D., reviewed Plaintiff's medical records and agreed with much of Dr. Bolz's opinion. (Tr. 170-72). Notable differences, however, include Dr. Hinzman's opinion that Plaintiff could frequently balance, but

5

could never climb ladders, ropes, or scaffolds.  (Tr. 170).  In addition, Dr. Hinzman assessed a number of environmental limitations, including the need to avoid even moderate exposure to temperature extremes, hazards, and humidity, as well as "avoid all exposure" to "fumes, odors, dusts, gases, poor ventilation, etc.," due to chronic lung disease.  (Tr. 171).

**C.  Hearing Testimony**

   At the August 29, 2013 hearing, Plaintiff testified to the following:

- He completed high school and completed vocational training for tool and die making.  (Tr. 67-68).

- He last worked in 2009 as a tool and die maker.  (Tr. 68).  At that job, the most weight he lifted by himself was 60-70 pounds.  (Tr. 70).  The work involved standing/walking all day long.  (Tr. 70).

- At an earlier job where he was also a tool and dye maker, he would sometimes have to lift 100 pounds by himself.  (Tr. 71).

- All his work since 1994 has been in the tool and die field.  (Tr. 72-76.)

- He is unable to work due to protruding discs for which he has had surgery on both his neck and back.  His right, dominant arm is numb.  He can hardly walk.  Sitting, standing, and walking all cause pain which requires him to lay down.  (Tr. 77).

- He has some problems with dressing and holding objects, and requires assistance showering.  (Tr. 79-80).

- He has difficulty writing due to lack of sensation, and he has trouble seeing due to cataracts.  (Tr. 78-79).

- When he goes to the grocery store with his wife, he needs to ride a cart.  (Tr. 79).

- He takes medication for his pain, which helps, but experiences a "cloudy feeling" from the high dosage of his medication.  (Tr. 79).

- He can drive a car for short distances, but refrains from doing so when he is on medication.  (Tr. 79-80).

- He performs a "little bit of housework," such as doing the dishes and wiping off counter tops. He cannot sweep or mop due to his back. (Tr. 80). He can do "some of the laundry," but has a hard time folding clothes so his wife does most of it. (Tr. 81).

- He does not perform any yard work. (Tr. 80-81).

- When asked how he spends most of his day, he indicated that he does a bit of housekeeping when he can, and lays down quite a bit. He sometimes watches television while laying down. He attends several doctors' appointments per month and accompanies his wife to the grocery store. (Tr. 81-82).

- He used to enjoy wood-working, but cannot do that any longer. He does not read. (Tr. 82).

- He has sarcodoisis of the lungs, for which he receives albuterol treatments. He also uses inhalers. He has central sleep apnea and has received 8-hours of oxygen a night for the past two years. (Tr. 83).

- He has difficulty sleeping and is roused every two hours by pain or breathing difficulties. (Tr. 84).

- He has been prescribed Methadone and Lyrica, which makes him feel "foggy" and forgetful. (Tr. 84-85).

- He has been on steroids for sarcodoisis for over a year. (Tr. 85). He has gained 55 pounds since he began steroid treatment. Steroids have also caused him to have anger issues, resulting in a prescription for a psychotropic medication to calm him. (Tr. 86).

- He recently had back surgery. (Tr. 85).

- He is 5'6" tall and weighs 210 pounds. He used to weigh 175 pounds before steroid treatment. (Tr, 87).

The VE classified Plaintiff's past relevant work as a tool and die maker, Dictionary of Occupational Titles ("DOT") § 601.260-010, medium exertional level with an SVP of 8, sometimes performed at the heavy exertional level. (Tr. 89).

The ALJ proceeded to pose the following hypothetical to the VE:

7

> [C]onsider a person of the claimant's age, education, and past relevant work experience, with the capacity for light work, who could climb ramps and stairs frequently, but never climb ladders, ropes, or scaffolds; who would be able to balance frequently; **never stoop**, but who could kneel and crouch occasionally; never crawl; who would have to avoid exposure to extremes of heat and cold; avoid exposure to humidity; **avoid all exposure to fumes, dusts, odors, gases**, and so forth; and avoid all exposure to hazards – defined as industrial machinery, unprotected heights, and similar other things – would such a person be able to perform the work the claimant performed in the past?

(Tr. 89-90) (emphasis added).

The VE testified that such an individual would be unable to perform Plaintiff's past relevant work. (Tr. 90). When asked whether such an individual could perform any other kind of work, the VE responded there would be some jobs at the light exertional level and offered the following examples: house-keeping, cleaner, DOT § 323.687-014 with an SVP of 2 (2,000 jobs locally, 30,000 in Ohio, and 500,000 nationally); mail clerk, DOT § 209.687-026 with an SVP of 2 (700 jobs locally, 8,000 in Ohio, and 160,000 nationally); and, small products assembler, DOT § 739.687-030 with an SVP of 2 (1,000 jobs locally, 15,000 in Ohio, and 200,000 nationally). (Tr. 90).

Based upon questions from Plaintiff's counsel, the VE testified that additional breaks, a sit/stand option, or being off-task 20 percent of the time would eliminate the jobs identified. (Tr. 91-92).

Also in response to Plaintiff's counsel's questions, the VE stated that the housekeeping/cleaner job involved "very little" stooping, but he did not believe it was included among the prohibited posturals identified by the ALJ.[4] (Tr. 92). With respect to exposure to

---

[4] The ALJ did not correct the VE with respect to the hypothetical question's clear inclusion of a prohibition against stooping, nor did she otherwise pose any additional questions to the VE for clarification. (Tr. 89, 92-94).

8

fumes and odors, the VE stated that the housekeeper position does not necessarily involve exposure to fumes, but did state there are "odors, of course, in a lot of cleaning materials." (Tr. 92). However, he did not believe odors were a limiting factor unless "absolutely no exposure is indicated."[5] (Tr. 93).

### III.  Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law in September 26, 2013 decision:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The claimant has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease, osteoarthritis, sarcoidosis and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: He can never climb ladders, ropes or scaffolds. **The claimant can never stoop** or crawl. He can frequently climb ramps or stairs and frequently balance. The claimant can occasionally kneel and crouch. He should avoid exposure to extremes of heat and cold as well as humidity. **The claimant should avoid all exposure to pollutant irritants, such as fumes, odors, dusts**, gasses [sic], and poor ventilation. He should avoid all exposure to workplace hazards, such as industrial machinery and unprotected heights.

---

[5]  Again, the ALJ did not correct the VE with respect to the hypothetical question's inclusion of a prohibition against all exposure to odors, nor did she otherwise pose any additional questions to the VE for clarification. (Tr. 89, 92-94).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January **, 1961 and was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 50-58) (emphasis added).

### IV.  Disability Standard

A claimant is entitled to receive a Period of Disability, Disability Insurance Benefits or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 20 C.F.R. §§ 404.1505, 416.905(a).

### V. Standard of Review

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kennedy v. Astrue*, 247 Fed. App'x 761, 2007 WL 2669153, at *3 (6th Cir. 2007); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed. (*Id.*)

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *See Kennedy*, 247 Fed. App'x 761, 2007 WL 2669153, at *3; *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

### VI. Analysis

Plaintiff claims the ALJ erred by: (1) relying on VE testimony that failed to incorporate

11

all the limitations set forth in the hypothetical question posed; and (2) not giving good reasons for failing to fully credit the functional limitations assessed by Dr. Kabbara, whom Plaintiff contends is a treating source. Each will be discussed in turn.

**A. Step Five**

Plaintiff takes issue with the ALJ's reliance on the testimony of the VE as evidence that he is capable of performing a significant number of jobs in the national economy. (Doc. 16 at pp. 13-15). Specifically, Plaintiff contends that the VE ignored two of the limitations included in the hypothetical question when giving his testimony – a prohibition against stooping and a prohibition against exposure to fumes, dusts, odors, and gases. (*Id*.) As such, Plaintiff contends the VE's testimony could not be used as substantial evidence to show that a significant number of jobs exist in the national economy that Plaintiff can perform. Essentially, Plaintiff argues the ALJ did not meet her burden at Step Five of the sequential evaluation. (Doc. 19 at p. 4).

At the fifth and final step of the disability analysis, the ALJ must determine whether, in light of the claimant's RFC, age, education, and past work experience, the claimant can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v). At this step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *accord White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779 (6th Cir. 2009). To meet this burden, there must be a finding supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs. *Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 799 (6th Cir. 2004) (*quoting Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)).

Testimony of a vocational expert in response to a hypothetical question may serve as substantial evidence that the claimant has the ability to perform specific jobs as long as the question accurately accounts for the individual's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). But "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). When forming a hypothetical question to present to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

It is indisputable that the hypothetical question the ALJ posed to the VE, quoted above, states that the hypothetical individual could "never stoop," and must "avoid all exposure to fumes, dusts, odors, gases...." (Tr. 89-90). The ultimate RFC finding, consistent with the hypothetical question posed to the VE, also indicated that Plaintiff could "never stoop" and "should avoid all exposure to pollutant irritants, such as fumes, odors, dusts, gasses [sic], and poor ventilation." (Tr. 52). As summarized above, the VE testified as follows:

[Counsel]: And on the house-keeping job, don't house-keepers generally have to do at least some stooping?

[VE]: Yeah, well, it's very little, according to the DOT. The **stooping**, that would be a, you know – it's more than a limited basis, but **I don't believe that was one of the "unable" posturals to be done,**

13

                                  **according to the Judge's hypothetical**.[6]

[Counsel]: Okay. And wouldn't there be at least – and I know the DOT doesn't necessarily deal with fumes and odors in the way we think – but wouldn't there be some exposure to odors from either the chemicals they're using to clean the bathrooms or things of those kinds?

[VE] Well, there's **odors**, of course, in a lot of cleaning materials, but there isn't necessarily fumes that are, you know, pushed around in the air. **I don't usually believe that's a limiting factor, unless there is absolutely no exposure indicated**.

(Tr. 92-93) (emphasis added).

Despite the ALJ's clear statement that both stooping and exposure to odors are prohibited, the VE apparently misconstrued the hypothetical question and plainly omitted those limiting factors from his responses. Rather inexplicably, the ALJ failed to clarify or reiterate the functional limitations of the hypothetical question for the VE's benefit.

Based on the VE's own testimony, it appears that the housekeeping/cleaner position is beyond Plaintiff's functional capacity as determined by the ALJ. The Commissioner, however, argues that Plaintiff has only challenged the VE's testimony as it relates to one of the three jobs identified. (Doc. 18 at pp. 17-18). Therefore, the Commissioner contends that the remaining two jobs constitute substantial evidence that Plaintiff could perform a significant number of jobs in the national economy. (*Id*.) The Court disagrees.

First and foremost, the VE's testimony makes it clear that he did not believe the hypothetical question prohibited stooping or exposure to odors. Therefore, it is reasonable to presume that the VE's misunderstanding of the hypothetical question's parameters extended to

---

[6] According to the DOT, the position of cleaner/housekeeping involves occasional stooping (exists up to 1/3 of the time). DOT § 323.687-014.

the entirety of his testimony. Second, a number of social security rulings point out that the ability to perform at least some amount of stooping is required even in the light exertional range. *See, e.g.,* Social Security Ruling ("SSR") No. 83-10, 1983 SSR LEXIS 30 (1983) ("The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping."); SSR 85-15,1985 SSR LEXIS 20 (1985) ("Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved. If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact.") As explained by SSR 83-14, 1983 SSR LEXIS 33 (1983), "to perform substantially all of the exertional requirements of most sedentary and light jobs, a person ... would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job). Because lifting or carrying of objects weighing up to 10 pounds is required for the full range of light work, it is "implie[d] that the worker is able to do occasional bending of the stooping type; *i.e.*, for no mor[e] than one-third of the workday to bend the body downward and forward by bending the spine at the waist." (*Id*.) Even the less demanding requirements of sedentary work would be significantly affected by a complete prohibition against stooping. *See* SSR 96-9p, 1996 SSR LEXIS 6 (1996) ("An ability to stoop occasionally; *i.e.*, from very little up to one-third of the time, is required in most unskilled sedentary occupations. A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work.")

15

Given the significant impact of a complete prohibition against stooping, the Court cannot find the Commissioner has carried her burden at Step Five by relying on the other two jobs identified by the VE.  While the Court is aware that the DOT states stooping is "Not Present - Activity or condition does not exist" with respect to both the mail clerk (DOT § 209.687-026) and small products assembler (DOT § 739.687-030) jobs, the Court declines to play the part of the vocational expert.  The VE's testimony certainly could vary from the DOT.  Furthermore, even if the Court presumes that stooping is not required for these other two jobs, the Court cannot discern in any reasonable manner the impact of the prohibition against fumes, odors, dust, and gases, as the DOT does not utilize these categories.[7]

For the above reasons, the Court finds Plaintiff's argument well-taken, as the Commissioner has failed to meet her burden at Step Five.  Upon remand, the ALJ should hold a new hearing eliciting the testimony of a vocational expert who is accurately apprised of the functional limitations posed in the hypothetical question.

**B. Treating Physician**

In his second assignment of error, Plaintiff argues the ALJ erred by failing to credit several of the functional limitations assessed by Dr. Kabbara.  (Doc. 16 at pp. 16-21).  He asserts the ALJ should have incorporated other limitations assessed by Dr. Kabbara, such as only 2 hours of standing/walking, only occasional fingering or grasping, rare handling, and no

---

[7] It would appear that the category of "Toxic Caustic Chemicals" is the closest approximation contained within the DOT.  However, this category appears to be much narrower and it is highly questionable whether it would encompass a prohibition against odors and dust.

16

crouching.[8]  (*Id*.)  Furthermore, Plaintiff avers that the ALJ by failing to expressly classify Dr. Kabbara as a treating physician.  (*Id*.)

It is well-established that the ALJ must afford special attention to findings of a claimant's treating source.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  This doctrine, known as the "treating source rule" reflects the Social Security Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history.  *Id*.; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2).  The treating source rule dictates that opinions from treating physicians are given controlling weight if the opinion is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "consistent with the other substantial evidence in the case record."  *Wilson*, 378 F.3d at 544.  When a treating source's opinion is not entitled to controlling weight, the ALJ is required to establish the weight given to the opinion by applying factors found in the governing regulations. 20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6).

Because a remand has already been deemed necessary based on Plaintiff's first assignment of error, it is not in the interest of judicial economy to decide the merits of Plaintiff's second assignment of error.  While the Commissioner's brief does not appear to take issue with Plaintiff's characterization of Dr. Kabbara as a treating source, the Court notes that Dr. Kabbara had seen Plaintiff only three times at the time he offered his functionality assessment.  "The question is whether [the claimant] had the ongoing relationship with [the physician] to qualify as

---

[8] It is clear from the previous section that the ALJ accepted Dr. Kabbara's opinion concerning a prohibition against stooping.

17

a treating physician **at the time he rendered his opinion**." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 506 (6th Cir. 2006) (emphasis added). In *Kornecky*, the Sixth Circuit declined to find a treating physician relationship, noting that subsequent visits to a physician after the RFC assessment had been made "could not retroactively render [the doctor] a treating physician at the time of the assessment." 167 Fed. App'x at 506 n.10; *accord Thompson v. Astrue*, 2011 U.S. Dist. LEXIS 84542 (N.D. Ohio, Aug. 2, 2011). "Precedent in this Circuit suggests that a physician who treats an individual only twice or three times does not constitute a treating source." *Hickman v. Colvin*, 2014 U.S. Dist. LEXIS 82914 (M.D. Tenn. June 18, 2014) (*citing Kornecky*, 167 Fed. App'x at 506-07; *Daniels v. Comm'r of Soc. Sec.*, 152 Fed App'x 485, 491 (6th Cir. 2005); *Coy v. Astrue*, 2012 U.S. Dist. LEXIS 161980, at *15 (N.D. Ohio Nov. 13, 2012); *Pethers v. Comm'r of Soc. Sec.*, 580 F. Supp. 2d 572, 579 n.16 (W.D. Mich. 2008)).

The Court declines to decide this question, as it is more appropriately left for the ALJ. On remand, the ALJ should clearly state whether she considers Dr. Kabbara a treating source. If he is deemed a treating physician, the decision should also contain an analysis that comports with all applicable rules, regulations, and binding legal precedent governing treating source opinions.

### VII. Conclusion

For the foregoing reasons, the court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly, the decision is VACATED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Kenneth S. McHargh
U.S. Magistrate Judge

Date: August 31, 2016